UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JAMAL SALAAM BEY,

     *Petitioner*,

   -against-

SUPERINTENDENT P. CHAPPIUS,
SUPERINTENDENT OF ELMIRA
CORRECTIONAL FACILITY,

    *Respondent*.

--------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 30 2019

BROOKLYN OFFICE

Rcw'd 10/1/19

**MEMORANDUM & ORDER**

16-CV-7084 (KAM)

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

On October 9, 2013, a jury of the Supreme Court of the State of New York, Queens County ("the trial court") found Jamal Salaam Bey ("petitioner") guilty of second-degree robbery, third-degree assault, and possession of stolen property in the fifth-degree. On December 16, 2013, the trial court imposed on petitioner a twelve-year prison term for the robbery conviction, to be served concurrently with two one-year terms for the assault and possession of stolen property convictions, all to be followed by a five-year term of post-release supervision. Petitioner appealed his conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (hereinafter, "Appellate Division"). The Appellate Division affirmed his conviction. Petitioner now seeks relief from this court pursuant to 28 U.S.C. § 2254.

In his petition, filed on December 19, 2016, petitioner appears to raise three grounds for his requested habeas relief. First, he challenges the sufficiency of the evidence supporting the "physical injury" element of his assault conviction. (Pet. 8.) Second, he alleges the prosecutor improperly used his criminal history against him in arguing for an enhanced sentence. (*Id.* at 6.) Third, and alternatively, he alleges the prosecutor "made up a story" about petitioner's criminal history, which constituted "malicious prosecution."[1] (*Id.* at 9.) For the reasons set forth below, the court DENIES the petition in its entirety.

**BACKGROUND**

On February 10, 2013, Abdourahmane Hamidou, a store security guard for a Trade Fair supermarket in Queens County, New York, saw petitioner remove bars of soap from the store shelves and put them into his pocket while monitoring the aisles (Trial Transcript ("Tr.") 494, 704-705, 709-10, 734, 739-41, 744-46.) Hamidou asked petitioner to return the items to the shelves, to which petitioner responded "fuck you, motherfucker" and started punching Hamidou's head. (Tr. 499-504, 518-521, 558-560, 579-81, 710-14, 716-17, 731, 739, 741-45.) As Hamidou grabbed petitioner by the waist to keep him from leaving the

---

[1] As respondent correctly notes, petitioner appears to have skipped the space for "Ground Two" on the form 28 U.S.C. § 2254 petition he completed by hand. (*See* Pet. 6.)

store with the stolen goods, petitioner pulled Hamidou's hooded sweatshirt over his head, thus obstructing his vision and the use of his arms, continued punching Hamidou's head and body, and then attempted to flee while bashing Hamidou's head into the aisles and a candy machine near the supermarket exit. (Tr. 499-500, 503-504, 518-521, 558-560, 636-637, 639-643, 677-78, 713-714, 716, 743-745.) Farjana Sarker, a store manager, called the police after witnessing petitioner repeatedly punch Hamidou in the head and slam Hamidou's head into the candy machine. (Tr. 633-34, 504-09, 536, 564, 569.) After petitioner continued to punch and drag Hamidou and attempted to break free for about three to ten minutes, Hamidou, Mohammad Chaudry, another store manager, and Useman, another guard, all tried to pull petitioner back into the store to wait for the police. (Tr. 716-718, 743-744, 505-506, 562-644, 642-645, 649-650, 669-670, 678-680, 716-18, 743-44.) Hamidou fell to the ground in this struggle. (Tr. 680.) Chaudry and Hamidou made petitioner sit and wait until the police arrived, even though petitioner refused. (Tr. 646-47, 719-20.) Petitioner told Hamidou that he would be coming back later for him. (Tr. 664, 719-20.)

As a result of petitioner's punches, Hamidou experienced a laceration over his eye, substantial pain in his head and eye, chest pain, dizziness; his whole body hurt, and breathing was painful. (Tr. 714-16, 755.) After the

altercation, Hamidou felt unwell and bled from a cut over his eye as a result of his head being smashed against the aisles and the candy machine. (Tr. 505, 510, 652-53, 713-14, 722-23.) Hamidou's breathing was labored, and he held his chest after petitioner was brought back into the store. (Tr. 653, 713-714, 722-24.) Sarker recovered the soap, candy, and ice cream that had fallen out of petitioner's pockets. (Tr. 533-34, 647-49, 660-62, 685, 599-602, 614.)

Officers James Bing and Mohammad Rahman responded to the incident. (Tr. 596, 778-780.) Bing noticed Hamidou's labored breathing. (Tr. 598-99, 610-11, 780.) He requested an ambulance for Hamidou and Chaudry, whose thumb was lacerated in the incident. (Tr. 600, 610-11.) Hamidou refused to go to the hospital, and the responding emergency medical technicians believed he had no medical insurance. (Tr. 723-24.)

Hamidou's dizziness persisted for three or four days; he did not work the day following petitioner's robbery, and worked only a half-day the day after that. (Tr. 725.) He also had "real" chest pain for two or three days after the incident and head pain for about two weeks. (Tr. 722.) Hamidou had a visible mark from the cut above his eye for months following the robbery. (Tr. 723.) He took Advil for two weeks after the incident and used pain relief ointment for his body up until the time of trial. (Tr. 724.) He was transferred to a maintenance

work position in the store at his request because he no longer wished to work as a security guard after the incident. (Tr. 632, 702.)

During the government's case-in-chief, several store surveillance videos that depicted most of the robbery were admitted into evidence and viewed by the jury. Petitioner submitted his medical records from Mount Sinai Hospital into evidence which contained an emergency medical technician's report. (Tr. 791.)

On October 9, 2013, the Queens County Grand Jury charged petitioner with second-degree robbery, (N.Y. Penal Law § 160.10(2)(a)), third-degree assault, (*id.* § 120.00(1)), fifth-degree possession of stolen property, (*id.* § 165.40), and harassment. (Opp. 1; Tr. 889-92.) On December 16, 2013, after a jury trial before the Honorable Deborah Modica in the Queens County Supreme Court, petitioner was convicted of all counts except the harassment count. As petitioner was a second-felony offender, the court imposed the following concurrent sentences: a twelve-year determinate prison term on the robbery conviction to be followed by five years of post-release supervision, and two one-year terms each on the assault and possession of stolen property counts. (Sent. Tr. ("S.") 28.)

Petitioner appealed his conviction to the Appellate Division. He argued that (1) the proof of the injury element of

his assault conviction was legally insufficient, and the verdict
was against the weight of the evidence; and (2) the court abused
its discretion at sentencing when it denied counsel's request
for a mental health examination and when it imposed a twelve-
year prison sentence, which was excessive in view of the
circumstances of the incident, petitioner's mental instability,
and the government's pre-trial offer of a five-year sentence.
(State Ct. R. ("SR.") 1-34.)   On June 22, 2016, the Appellate
Division affirmed petitioner's conviction and sentence. *People
v. Bey*, 140 A.D.3d 1079 (N.Y. App. Div. 2016).  The court
rejected petitioner's challenge to the evidence, finding that
the People had "adduced legally sufficient proof of the physical
injury element of the robbery and assault counts," and that the
verdict with respect to the injuries was not against the weight
of the evidence. *Id*. at 1080.  The court also found that the
sentencing court did not improvidently exercise its discretion
in denying counsel's request for, "in effect, a mental health
evaluation in connection with sentencing," and that petitioner's
sentence was not excessive. *Id*.  Petitioner sought leave to
appeal from the New York Court of Appeals. (SR. 90.)  He once
again challenged the sufficiency of the trial evidence as to
physical injury, and also challenged the sentencing court's
decision not to order a psychiatric examination. (*Id*. at 89-93.)

6

On October 20, 2016, the Court of Appeals denied petitioner leave to appeal. *People v. Bey*, 28 N.Y.3d 1025 (N.Y. 2016).

Petitioner, proceeding *pro se*, timely filed the instant habeas petition on December 19, 2016, raising largely the same challenge as he did on direct appeal to the sufficiency[2] of the "physical injury" element of his assault conviction, and additionally contending that the prosecutor improperly used his criminal history against him, or fabricated that history, in arguing for an enhanced sentence. (Pet. 1, 6, 8-9.)

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

[2]    In the form section for "Ground Three," petitioner wrote "[the verdict] was against the weight of the evidence, because the people failed to establish that the complainant suffered physical injury." (Pet. 8.) If this court were to construe petitioner's claim as a weight-of-the-evidence claim—which it does not—such claim would not be cognizable on habeas review. A "weight of the evidence" claim is based on state law. *See Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). The court cannot consider a purely state law claim on federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Thus, a challenge to the weight of the evidence concerns "an error of state law, for which habeas review is not available," because it presents no federal issue. *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). AEDPA's standard is a highly deferential standard of review, "requiring courts to assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018), *cert. denied*, No. 18-8348, 2019 WL 1104003 (U.S. Apr. 22, 2019) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A federal habeas court must presume all state court factual determinations to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness in the state court's factual findings is particularly strong when the state court jury has assessed witness credibility. *See Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003); *see also Lanfranco v. Murray*, 313 F.3d 112, 117 (2d Cir. 2002); *Jimenez v. Walker*, 458 F.3d 130, 145.

Under AEDPA, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard has been characterized as "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citing *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

A petitioner will prevail on a claim under 28 U.S.C. § 2254(d)(1) only if she can show that "the state court arrive[d] at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decide[d] a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Guerrero v. Tracey*, 425 F. Supp. 2d 434, 446 (citing *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994)).

**DISCUSSION**

I.      **Sufficiency of the Evidence**

        A.      **Exhaustion**

Petitioner challenged the sufficiency of the evidence as to the physical injury element of his robbery and assault convictions on his direct appeal, (SR. 3, 15), and on his leave application to New York's highest court, the Court of Appeals, (*id.* at 90). Petitioner has thus exhausted the remedies available to him in state court as to this claim. *See* 28 U.S.C. 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[W]e conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Therefore, the Appellate Division's finding, on the merits, that the People proved with legally sufficient evidence that Hamidou sustained physical injury as a result of petitioner's actions, *Bey*, 140 A.D.3d at 1080, is subject to deferential review by this court on federal habeas review. *See also Hardy v. Cross*, 565 U.S. 65, 66 (2011); *Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

**B.  Merits Analysis**

A "petitioner bears a heavy burden in convincing a habeas court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 812 (2d Cir. 2000); *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). The Supreme Court has reaffirmed the fundamental principle "that it is the responsibility of the

jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). Thus, a state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also McDaniel v. Brown*, 558 U.S. 120, 127-38 (2010) (reaffirming the standard of review set forth in *Jackson*); *accord, e.g., Wright v. West*, 505 U.S. 277, 296 (1992); *Fama*, 235 F.3d at 811.

In analyzing the sufficiency of the evidence at trial, the court must "look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999); *see also Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense.'" (quoting *Jackson*, 443 U.S. at 324 n.16)). Pursuant to New York Penal Law, a person is guilty of second-degree robbery when he forcibly steals property and when "in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . causes physical injury to any person who is not a participant in the crime." N.Y. Penal Law § 160.10(2)(a). A person is guilty of third-degree assault when,

"with intent to cause physical injury to another person, he causes such injury to such person or to a third person." *Id.* § 120.00(1).

Physical injury is defined as "impairment of physical condition or substantial pain." *Id.* § 10.00(9). "'[S]ubstantial pain' cannot be defined precisely, but it can be said that it is more than slight or trivial pain." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 266 (E.D.N.Y. 2014). Under New York law, the question of whether "substantial pain" has been established is typically one for the trier of fact. *See, e.g., In re Philip A.*, 49 N.Y.2d 198, 200 (1980); *People v. Brown*, 95 A.D.3d 1229 (N.Y. App. Div. 2012); *People v. Monserrate*, 90 A.D.3d 785, 787 (N.Y. App. Div. 2011). Substantial pain requires "more than a mere technical battery," that is, "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives, are not within the definition of the statute." *People v. Henderson*, 92 N.Y.2d 677, 680 (1999). Instead, there is an objective threshold below which the question becomes one of law. *In re Philip A.*, 49 N.Y.2d at 200. When conducting an objective analysis of substantial pain, courts consider a variety of factors and examine the facts unique to each case. *See People v. Chiddick*, 8 N.Y.3d 445, 447 (2007); *see also People v. Rivera*, 42 A.D.3d 587, 588 (N.Y. App. Div. 2007). New York courts consider several factors when

determining if pain is substantial within the meaning of the statute: "(1) whether the injury suffered 'would normally be expected to bring with it more than a little pain;' (2) the victim's 'subjective description of what he felt;' (3) whether the victim sought medical treatment; and (4) the defendant's motive in inflicting the harm." *Taylor*, 18 F. Supp. 3d at 267 (citing *Taylor v. Brown*, No. 10-CV-5262, 2011 WL 797448, at *17 (S.D.N.Y. Mar. 8, 2011)), *adopted by* 2011 WL 2493528 (S.D.N.Y. June 22, 2011). None of these factors, however, is dispositive, *see United States v. Graves*, 466 F. App'x 56, 57 (2d Cir. 2012), and "pain need not . . . be severe or intense to be substantial," *Chiddick*, 8 N.Y.3d at 447. Even "relatively minor injuries causing moderate but more than 'slight or trivial pain' may constitute physical injury." *In re Lovenia V.*, 68 A.D.3d 476, 476 (N.Y. App. Div. 2009) (citing *Chiddick*, 8 N.Y.3d at 447); *Rivera*, 42 A.D.3d at 558.

Here, it is beyond "fairminded disagreement" that the people proved that petitioner caused substantial pain and thus "physical injury" to Hamidou. Hamidou testified that petitioner's repeated head and body punches caused him pain and breathlessness, as did petitioner's bashing of Hamidou's head into supermarket aisles and the candy machine. (Tr. 714.) He also testified that the open laceration above his eye was painful. (Tr. 722.) His head hurt for two weeks after the

assault, he had chest pains for two or three days after, he felt dizzy for three to four days after, and used pain-relief ointment for months after the assault. (Tr. 722, 724-25.) Hamidou missed work the day following the assault and worked only a half-day after that because he was still in pain and dizzy. (Tr. 725.) The jury had ample evidence, from this testimony alone, to support their reasonable conclusion that petitioner's actions caused Hamidou physical injury and substantial pain during and after the robbery.

In addition to Hamidou's testimony, the jury heard from several other witnesses who observed petitioner inflict the repeated blows and Hamidou's resulting injuries, all which further support the jury's verdict. *See Chiddick*, 8 N.Y.3d at 447. Sarker and Chaudhry testified that after petitioner repeatedly punched Hamidou and struck his head against the candy machine, Hamidou bled from a cut above his eye. (Tr. 505-07, 510, 582-84, 653, 723.) Both saw Hamidou clutch his chest and appear to have difficulty breathing, and Chaudhry heard Hamidou complain that he was in pain. (Tr. 507-08, 653.) Officer Bing saw that Hamidou's breathing was labored and called for an ambulance. (Tr. 599.) Hamidou displayed to the jury the scar above his eye. (Tr. 723.) *See People v. Tejeda*, 78 N.Y.2d 936, 937 (1991) (finding laceration that left a scar established physical injury).

14

Additionally, the nature in which petitioner assaulted Hamidou supports a finding of physical injury. *See People v. Nelson*, 69 A.D.3d 762, 763 (N.Y. App. Div. 2010). The record reflects the vicious way in which petitioner attacked Hamidou, pulling Hamidou's jacket over his head and dragging him out of the store while bashing his head into the aisles and a candy machine. (*See, e.g.*, Tr. 499-504, 518-21, 558-60, 636-43, 677-78, 713-714, 716, 743-745.)  The attack was also prolonged, lasting between three and ten minutes. (Tr. 562, 716.)  It also bears noting that petitioner weighed about 80 pounds more than Hamidou at the time of the assault; this weight differential certainly increased the force of petitioner's blows. (Tr. 676, 747-748, 778, 784.)  It cannot be said that petitioner's assault was "a mere technical battery."  The sum of this evidence also supports a reasonable inference that Hamidou suffered substantial pain, and physical injury, from petitioner's assault.

Even assuming Hamidou did not receive medical treatment as a result of the attack, hospitalization or medical treatment is not required to prove the element of physical injury; treatment or lack thereof is just one factor for the jury to consider. *See People v. Greene*, 70 N.Y.2d 860, 862 (1987).  Additionally, Hamidou's complaints of pain were corroborated by the substantial evidence described above:

15

Hamidou's co-workers' descriptions of his injuries; the observations of the witnesses and responding officers; the visible scar at trial; and the brutal manner in which petitioner assaulted Hamidou. Therefore, the court accords deference to the jury's decision, and the jurors' opportunity to observe the witnesses and hear their testimony. *People v. Rahman*, 84 A.D.3d 1119, 1119 (N.Y. App. Div. 2011) (citing *People v. Mateo*, 2 N.Y.3d 383, 410 (2004) and *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987)). Likewise, the court must accord deference to the state court's decision which was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The petition is therefore denied as to this claim.

## II.  Excessive Sentence Claim

### A.  Exhaustion

Petitioner next challenges his sentence as unconstitutionally excessive. (Pet. 6, 9.) Reading petitioner's *pro se* filing liberally, as this court must, his sentencing claim can be fairly read as an attack on his sentence as "simply excessive," [cite], or as a due process challenge alleging prosecutorial misconduct, *Moore v. Conway*, 476 F. App'x 928, 930 (2d Cir. 2012) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas

corpus is the narrow one of due process." (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994))). The court must first be satisfied that petitioner has exhausted this claim, construed in either manner, in state courts. Respondent contends that, viewed as the former, petitioner's "simple excessive sentencing" claim is exhausted but procedurally barred because petitioner failed to present it on appeal. (Opp. 16-17.) And, viewing petitioner's claim as the latter, for prosecutorial misconduct, the claim is unexhausted as petitioner may collaterally attack his sentence in State court pursuant to New York's Criminal Procedure Law § 440.20. (*Id.* at 16.) Construed either way, respondent argues, petitioner's claim is not cognizable on habeas review. (*Id.* at 17.)

To exhaust claims in state court, a petitioner must "fairly present" each federal claim to the highest available state court. *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Fama*, 235 F.3d at 808-09 (quoting *Picard v. Connor*, 404 U.S. 270, 275(1971)). That is, a claim is exhausted when: (1) a petitioner fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) the petitioner has presented his claim to the highest state court that can hear the claim. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *O'Sullivan*, 526 U.S. at 845-48. On his direct appeal to the Appellate Division,

petitioner did not contend that the prosecutor obtained an excessive sentence by using petitioner's criminal history against him or that she fabricated that history.[3] (*See* SR. 26-32.) Instead, petitioner argued first that the sentencing court abused its discretion by refusing to order a psychiatric examination despite petitioner's erratic behavior at sentencing. (*Id.* at 26.) Second, petitioner argued that his sentence was excessive because the sentencing court failed to properly weigh mitigating factors in petitioner's favor. (*Id.* at 29.) The Appellate Division affirmed petitioner's conviction and sentence, holding that the sentencing court "did not improvidently exercise its discretion" in denying petitioner's request for a mental health evaluation, and that petitioner's sentence was not excessive. (*Id.* at 87-88); *Bey*, 140 A.D.3d at 1080. Petitioner apparently abandoned his excessive sentence challenge as his leave application to New York's highest court only asked that court to consider "the circumstances under which a sentencing judge is obliged to order a psychiatric examination."[4] (SR. 90.)

---

[3]     To the extent petitioner could bring his claim of prosecutorial misconduct based on an alleged fabricated criminal history, the government notes, and this court agrees, he may bring it a N.Y. C.P.L. § 440.20 motion. This claim, so construed, is thus unexhausted. As discussed below, the court treats the instant petition as "mixed" as it includes both exhausted and unexhausted claims.

[4]     Petitioner also asked that court to consider "whether the evidence was sufficient to prove physical injury," and, as discussed above, that claim was properly exhausted. (SR. 90.)

As a result, petitioner's sentencing claim, construed as either an excessive sentence claim or as a prosecutorial misconduct claim, is unexhausted for purposes of habeas review as neither was presented to New York's highest court. But, because petitioner has already taken his direct appeal and may no longer present his excessive sentence claim to any state court, the claim so-construed is thus deemed exhausted, but procedurally barred. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (deeming claim exhausted and procedurally barred when not raised in leave application to New York's Court of Appeals); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Thus, the court need not consider whether petitioner's sentence was excessive on the merits pursuant to 28 U.S.C. § 2254(b)(1)(A).

Even though a petitioner can overcome a procedural default if he demonstrates "actual innocence," there is no evidence to support this narrow exception and petitioner does not appear to argue as much. Moreover, a credible showing of actual innocence only permits a petitioner to pursue his *constitutional* claims on the merits, notwithstanding the procedural bar. "This rule . . . is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

Petitioner offers no new credible evidence of his actual innocence and, even so, actual innocence claims have "never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400.

### Mixed Petitions

Construing petitioner's claim as one for prosecutorial misconduct, however, the court agrees with respondent that petitioner can likely raise this claim in a motion to set aside his sentence pursuant to New York's Criminal Procedure Law § 440.20(1). (Opp. 16.) Therefore, petitioner has a remedy available to him in state court and his prosecutorial misconduct claim is thus unexhausted for purposes of habeas review. *Dominique v. Artus*, 25 F. Supp. 3d 321, 335-36 (E.D.N.Y. 2014); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, *by any available procedure*, the question presented." (emphasis added)); *O'Sullivan*, 526 U.S. at 847.

The petition is therefore "mixed" as it contains both exhausted and unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005). A court presented with a mixed petition has three options: (1) dismiss the mixed petition, *see id.* at 273; (2) stay the mixed petition and allow a petitioner to return to

state court to exhaust his unexhausted claims, *see id.* at 277; or (3) deny the petition on the merits, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). *Schouenborg v. Superintendent, Auburn Corr. Facility,* No. 08-CV-2865, 2013 WL 5502832, at *5 (E.D.N.Y. Sept. 30, 2013); *see also Pulinario v. Goord,* 291 F. Supp. 2d 154, 171-72 (E.D.N.Y. 2003). Petitioner has not moved for a stay to exhaust this claim, and district courts may generally grant a stay of an unexhausted petition *only* if: (1) the claim is not "plainly meritless;" and (2) the petitioner can provide "good cause" for his failure to properly exhaust all of the claims at the state level. *Rhines,* 544 U.S. at 277.

Petitioner has not attempted to show good cause for a stay. Nor can he. He now argues that the prosecutor's presentation of petitioner's criminal record at sentencing was "made up." Petitioner (and his counsel) were on notice to the alleged error or misconduct such that, in his counseled appeal, petitioner had every opportunity to challenge his sentence on this basis. Thus, the court cannot fathom what good cause prevented petitioner from exhausting a claim of prosecutorial misconduct in state court, while assisted by counsel, before

pursuing federal habeas review.  The court, therefore, will not stay this action.

Prior to AEDPA, when presented with a mixed petition courts generally dismissed the petition without prejudice.  *See, e.g., Rose v. Lundy*, 455 U.S. 509, 520 (1982).  Since AEDPA's enactment, however, courts have either denied the unexhausted claims on the merits, when appropriate, *see Pratt v. Greiner*, 306 F.3d 1190, 1196-97 (2d Cir. 2002), or deemed the unexhausted claims withdrawn, *see Concepcion v. Martuscello*, No. 16-CV-5918, 2017 WL 4536087, at *11 (S.D.N.Y. Oct. 11, 2017) ("[W]e would presume that [petitioner] prefers to withdraw these [unexhausted] claims from the petition to the extent they are formally included.  If [petitioner] intended to include these claims and were to oppose deeming the claims withdrawn, we would be compelled to dismiss [the] habeas corpus petition in its entirety on the ground that the petition is a 'mixed petition.'").  *See also Morel v. Smith*, No. 16-CV-8149, 2017 WL 3206598, at *6 (S.D.N.Y. July 27, 2017) ("In light of the fact that this is an unexhausted claim, we would deem it to be withdrawn from the petition because if we did not deem it withdrawn, we would be compelled to dismiss [the] habeas corpus petition in its entirety anyway.").

Here, the court need not deem this claim withdrawn as it will reach, and deny, the claim on the merits below.  Thus,

22

whether petitioner's claim attacks his sentence as
unconstitutionally excessive sentence, or as based on a
fabricated criminal history, the claim is either procedurally
barred, as discussed above, or unexhausted but nevertheless
meritless.

### B.  Merits Analysis

#### 1.  Excessive Sentence

Even if the court reads petitioner's excessive
sentence claim as a "simple" excessive sentence claim, that is,
that his sentence was too long as a matter of law, it is plainly
without merit, and the Appellate Division's denial of this claim
is beyond "fairminded disagreement."  An excessive sentence
claim may not provide grounds for habeas corpus relief where a
petitioner's sentence is within the range prescribed by state
law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Dorsey
v. Irvin*, 56 F.3d 425, 427 (2d Cir. 1995) ("No federal
constitutional issue arises from considering prior arrests when
a state sentence is within the range allowed by state law.");
*see also Taylor*, 18 F. Supp. 3d at 268 (citing *Pina v.
Kuhlmann*, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003)); *Gonzalez
v. Travis*, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) (finding
excessive sentence claim not cognizable for habeas review where
sentence was within statutory range); *see also Herrera v.
Artuz*, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (holding

imposition of consecutive sentences was appropriate and did not provide ground for habeas relief); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas review unless the sentence imposed falls outside the range prescribed by state law."); *Thomas v. Senkowski*, 968 F. Supp. 953, 956-57 (E.D.N.Y. 1997) (dismissing excessive sentence habeas claim where the petitioner's sentence fell within the range prescribed by state law).

Here, petitioner's sentences all fell within the ranges prescribed by New York law for the crimes of conviction. *See* N.Y. Penal Law §§ 70.02(1)(a)-(c), 70.02(2)(a), 70.02(3)(c), 70.25, 70.45(2)(f), 110.00, 120.05, 160.15. The Appellate Division's determination that petitioner's sentence was not excessive and not contrary to, nor an unreasonable application of, clearly established federal law, *Bey*, 140 A.D.3d 1079 at 1010, is entitled to deference under AEDPA. 28 U.S.C. § 2254(d). Indeed, in appealing petitioner's sentence as excessive, petitioner's counsel noted that "[t]he [sentencing court] sentenced [petitioner] to 12 years in prison, near the maximum 15-year term that was permissible." (SR. 29.) Accordingly, petitioner's application for habeas corpus relief on this ground is denied.

### 2. Prosecutorial Misconduct

Reaching the merits of petitioner's so-construed prosecutorial misconduct claim, the court likewise finds it plainly meritless. Arguing the merits of petitioner's prosecutorial misconduct claim, respondent contends that the prosecutor relied on undisputed proof of petitioner's prior convictions in moving for an enhanced sentence. (Opp. 18; S. 20.)

In deciding whether a prosecutor's misconduct "constituted more than mere trial error, and w[as] instead so egregious as to violate the [petitioner]'s due process rights" the Second Circuit has considered "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990)); *United States v. Parker*, 902 F.2d 91, 98 (2d Cir. 1990). Prosecutorial misconduct denies a defendant due process only when it is "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Blissett v. Lefevre*, 924 F.2d 434, 440 (2d Cir. 1991) (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987)).

At sentencing, the prosecutor presented certified dispositions to prove petitioner's four prior felony convictions along with an affirmative comparison of petitioner's

fingerprints from his prior arrests leading to a conviction and his arrest for the conviction he now challenges. (SR. 14-20.) Though petitioner was disruptive and announced his general objection to this aspect of the sentencing proceeding, his counsel did not dispute the evidence, conceded there were "four prior convictions," and instead argued that some of petitioner's prior convictions were not violent in requesting that the court impose the minimum sentence. (*Id.* at 20-23.) The record is bereft of any indication of misconduct by the prosecutor, who presented well-supported, accurate, and entirely undisputed information of petitioner's prior convictions in arguing for an enhanced sentence. This court cannot conclude that the prosecutor's presentation at sentencing "so infected the [proceedings] with unfairness as to" stymie petitioner's due process right to a fair trial. *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014). Thus, petitioner's challenge to his sentence, construed as a prosecutorial misconduct claim, likewise fails on the merits.

## CONCLUSION

Based on the foregoing, Bey's petition for a writ of habeas corpus is DENIED. Petitioner's claim of insufficient evidence of "physical injury" is without merit and he failed to establish that the state court's decision was contrary to, or involved in an unreasonable application of federal law, or that

the state courts applied an unreasonable determination of the facts under § 2254(d)(1). Petitioner's claim challenging his sentence is either procedurally barred or unexhausted and, in either case, plainly meritless. Thus, the petition is DENIED in its entirety. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. The Clerk of Court is respectfully directed dismiss the petition, mail a copy of this Order to petitioner at his address of record, note service on the docket, and close the case.

**SO ORDERED.**

Dated:     September 30, 2019
           Brooklyn, New York

/s/ USDJ KIYO A. MATSUMOTO
_____
**Kiyo A. Matsumoto**
United States District Judge